SMALL v. HOUSMAN et al.

(Supreme Court, Appellate Division, First Department.   February 3, 1911.)

1. APPEAL AND ERROR (§ 927*)—PRESUMPTION.
   On appeal from a dismissal of the complaint, the evidence must be considered in the light most favorable to the plaintiff.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.*]

2. PRINCIPAL AND AGENT (§ 178*)—NOTICE TO AGENT—AUTHORITY OF AGENT.
   Plaintiff's son was employed by a firm of stockbrokers, and gave orders on behalf of plaintiff, who operated an account with the brokers, and when plaintiff went to Europe she left her account in charge of her son. Plaintiff had securities in a safe-deposit box one key of which she took with her, leaving the other with a friend, who from time to time took securities from the box and delivered them to the son, to be deposited with the brokers in response to calls for further margin. *Held*, that a notice of sale of securities given by the brokers to the son was notice to plaintiff.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 680–684;  Dec. Dig. § 178.*]

3. PRINCIPAL AND AGENT (§ 177*)—KNOWLEDGE OF AGENT—IMPUTATION TO PRINCIPAL—STOCK TRANSACTIONS—CALL FOR MARGIN.
   Where plaintiff's son was operating her account with stockbrokers, and he knew the condition of the account and the state of the market, and that a further amount was required to keep the account properly margined, a demand on him for more margin was not insufficient for not specifying the amount required, so as to render the brokers liable for selling securities of plaintiff in order to protect themselves.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670–679;  Dec. Dig. § 177.*]

4. BROKERS (§ 24*)—DEMAND FOR MARGIN.
   Where two days elapsed between a broker's demand for more margin and a sale of securities by the broker to protect himself, a reasonable time was allowed.
   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19;  Dec. Dig. § 24.*]

5. BROKERS (§ 24*)—STOCK TRANSACTIONS—MARGIN.
   Plaintiff deposited with her stockbrokers, carrying stocks for her on margin, securities dealt in on the New York Stock Exchange. Reports of transactions made by the brokers to their customers contained the words, "Subject to the rules and regulations of the New York Stock Exchange." A notice given by the brokers for more margin was to the effect that the brokers would sell forthwith on the Exchange sufficient securities to relieve the account. *Held*, that there was a sufficient notice of the time and place of sale.
   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19;  Dec. Dig. § 24.*]

6. BROKERS (§ 24*)—MARGIN TRANSACTIONS—CALL FOR MARGIN—WAIVER.
   Where plaintiff's agent, operating on plaintiff's behalf an account with stockbrokers on margin, stated, on delivering to the brokers certain securities in response to a call for further margin, that it was the last he had of plaintiff's securities, it was a waiver of any call for further margin.
   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19;  Dec. Dig. § 24.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Ida Small against Clarence J. Housman and another. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

See, also, 133 App. Div. 897, 118 N. Y. Supp. 1143.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, and MILLER, JJ.

Eugene Treadwell, for appellant.

George Zabriskie, for respondents.

MILLER, J. This is an action by a customer against stockbrokers for conversion. The complaint is that, between the 24th day of October, 1907, and the 29th day of October, 1907, both inclusive, without any notice to the plaintiff of the amount due, without any demand upon her for the payment thereof, and without notice to her of an intention on the part of the defendants to sell any of her securities, or of the time and place of any proposed sale, the defendants wrongfully sold and converted her securities. The plaintiff's account was opened in January, 1905. Shortly prior thereto, her son entered the defendants' employ; his principal duty being to obtain customers and information. The plaintiff transacted all her business with the defendants through her son. On the 19th of July, 1907, she went abroad without making any provision to meet a demand for margin in case one should be made. She had a quantity of securities in a safe-deposit box, one key of which she took with her, leaving the other with a friend, who from time to time during the month of August took securities from the box and delivered them to said son, to be deposited with the defendants in response to calls for further margin. The said friend went to Europe in September, leaving certain securities with the son. On October 22d, the last of those securities, 100 shares of Southern Pacific, was delivered by the son to the defendants in response to a call for margins, and at that time the defendants were informed by the son that that was the last he had of his mother's securities. It is undisputed that, when the last 100 shares of stock was delivered by the son, the defendants demanded more margins, and that the son undertook to communicate with the plaintiff by cable, but did not succeed in doing so.

One of the defendants testified that, on the morning of October 24th, and again at 1 o'clock of that day, he notified the plaintiff's son that he was going on the Stock Exchange to sell securities to protect himself, to sell "whatever marketable securities there are in the account," that he again informed him on the morning of October 25th that he was going to continue the sale of securities, and that about 2 or 2:30 on the 29th of October he notified the son that he was going to sell Interborough Metropolitan bonds. The son denied having any conversation with said defendant on the morning of October 25th, but admitted that he was notified at 2 o'clock on October 24th that the defendants were then going to sell the Union Pacific stock, that he was also notified on the afternoon of October 29th that the defendants were about to sell $30,000 Interborough-Metropolitan bonds, and that the said defendant told him a number of times that

he would sell. The defendant sold, at 2:10 o'clock on October 24th, 1,800 shares of Union Pacific common; on October 25th, 200 shares of Missouri, Kansas & Texas common, 400 shares of American Smelting & Refining Company common, 400 shares of Southern Pacific preferred, and $25,000 Interborough-Metropolitan bonds; and on the 29th of October, 1907, $30,000 Interborough-Metropolitan bonds. There is no question but that the condition of the market justified the demand for additional margins, and that insistent demands for more margins were made upon the son, during the time in question, commencing at least two days before the first sale complained of was made. The appellant contends that the son was not authorized to receive the demand for margins, and notice of sale on behalf of the plaintiff, and that, in any event, sufficient notices were not given.

As the learned trial court dismissed the complaint, the case has to be considered upon the most favorable view of the evidence to the plaintiff. But we think the court was justified, upon the conceded facts, in holding that the son was authorized to represent his mother in the transactions with the defendants. Although both were sworn as witnesses, neither denied that the son had such authority. The defendants had dealt with the mother through the son, and, although he was in their general employment, they had the right from the course of business to treat him as the representative of his mother. While it is asserted that he gave orders on behalf of his mother, precisely as he did for other customers, it is quite apparent from the course of business that they dealt with him as the representative of his mother with her knowledge and acquiescence. Moreover, when she went to Europe, leaving a large speculative account with no one but her son, who had theretofore given all the orders for purchase or sale, to look after it, she in effect constituted him her agent to receive demands for margin and notices of sale. At any rate, under such circumstances, the defendants had the right to deal with the only person whom they had been accustomed to deal with in transactions, covering a period of more than 2½ years.

The demands for additional margins did not specify the amount required. However, they must be considered in view of the situation of the parties. The plaintiff's son knew the condition of the account and the state of the market. He knew what further sum was required to keep the account margined up to the amount required or agreed upon, and the demand for more margin implied a demand for such amount. Certainly a reasonable time was allowed, because at least two days elapsed after the first demand, not complied with, before a sale was made. The question, then, is whether there was sufficient notice of the time and place of sale. The securities were dealt in on the New York Stock Exchange. The defendants were members of the Stock Exchange. The reports of transactions made by the defendants to their customers contained the words, "Subject in all respects to the rules and regulations of the New York Stock Exchange," and, of course, it was understood by the plaintiff's son that the sales would be made on the Exchange.

Was the time sufficiently stated? The notices in effect were that the defendants would proceed forthwith to sell on the Exchange sufficient securities to relieve the account. That meant that sales would be made from time to time as the market afforded an opportunity. Of course, the fact was that the plaintiff's son did everything he could to protect the account. He succeeded in getting his uncle to take over a part of it. All the securities left with him had been exhausted. In getting his uncle to take over a part of the account, he exhausted all the resources he had, and he could have done nothing more, no matter what notice had been given him. But if he had been in a position to supply more margin, or to protect the interests of his mother by purchasing on the Exchange when the sales were made, he had sufficient demand for margin and sufficient notice of the time and place of sale to have enabled him to do both, and certainly that ought to be the test. His statement, on delivering the last 100 shares of collateral, that that was the last he had of his mother's, was obviously intended by him as notice to the defendants that he could not put up further margin, and it was a waiver of further call for margins, if it be assumed that such further call would otherwise have been necessary. In that situation, and in the condition of the market, the defendants were not obliged to face disaster by undertaking to carry the account. All of the surrounding circumstances have to be considered in determining the reasonableness of the demand and the sufficiency of the notice of time and place of sale. Although, in the absence of agreement or waiver, the broker in speculative transactions must give the customer reasonable opportunity to furnish additional margin when called for, and must give notice of time and place of sale (Content v. Banner, 184 N. Y. 121, 76 N. E. 913), the reasonableness of the demand and the sufficiency of the notice must, like all other transactions, be judged by the surrounding circumstances. In the case cited, no time or place was specified, and the sale was "on the curb." In this case it was plainly understood that the place of sale was the Stock Exchange, and that the time was forthwith, or whenever the market afforded an opportunity to make a sale. Moreover, the complaint is not of the sufficiency of the demand and notice, but of no demand or notice.

The conclusion which we have reached renders it unnecessary to consider the exceptions to rulings upon evidence, which could not in any event affect the decision.

Judgment should be affirmed, with costs. All concur.